Sophia M. Rios, SBN 305801
BERGER MONTAGUE PC
401 B Street, Suite 2000
San Diego, CA 92101
Telephone: 619.489.0300
Facsimile: 215.875.4604
E-mail: srios@bm.net

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| CHESTER L. HELDERMAN II,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>(1) Violation of 15 U.S.C. § 1681e(b)<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Chester L. Helderman II ("Plaintiff"), by counsel, states as follows for his Complaint against Defendant Experian Information Solutions, Inc., ("Experian"):

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages, costs, and attorneys' fees under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

2. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

3. To accomplish Congress' goals, the FCRA protects consumers through various requirements, including § 1681e(b), which is a cornerstone provision of the FCRA.

4. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high, and often disregarded, standard on credit reporting agencies.

5. In this case, Experian began reporting Plaintiff as deceased at some point in or before 2021. At all times relevant to this Complaint, Plaintiff was very much alive and well. As a result of Experian's conduct, Plaintiff has incurred significant damages, including being denied a mortgage as a direct result of Experian's publication of the inaccurate information.

6. Accordingly, Plaintiff alleges claims against Experian under the FCRA, 15 U.S.C. § 1681e(b), for failing to reasonably assure the maximum possible accuracy of his credit reports.

## JURISDICTION

7. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Experian resides in this District.

## PARTIES

9. Plaintiff is a natural person residing in Daphne, Alabama and, at all times relevant to the Complaint, was a "consumer" as defined by 15 U.S.C. §1681a(c).

10. Experian is a corporation with its principal place of business located at 475 Anton Blvd., Costa Mesa, CA 92626, and is authorized to do business in the State of California including in this District.

11. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## FACTS

12. Plaintiff has been stymied by Experian's false reporting that he is deceased, even though his credit report reflected that he is alive and making payments on multiple credit accounts.

13. Plaintiff wanted to purchase a home for his family and applied for a mortgage in June 2021.

14. Plaintiff's mortgage broker requested a merged credit file as part of the mortgage application.

15. Experian reported a Consumer Portfolio Services tradeline ("Consumer Portfolio tradeline") in Plaintiff's credit file that included an Equal Credit Opportunity Act ("ECOA") code of "X", indicating that Plaintiff is "deceased". The reporting was false because Plaintiff was, and currently is, alive.

16. Experian reported Plaintiff as deceased and without a credit score, based solely on the representation from one creditor associated with the Consumer Portfolio Services tradeline, even though, other activity on Plaintiff's credit file indicated that he is alive, such as payments being made on Plaintiff's open and active credit accounts.

17. Once a "deceased" notation is placed upon a consumer's report, Experian will not calculate and will not provide a credit score for that consumer. Rather, Experian will report that the consumer's credit score is "N/A."

18. Experian knows that third party credit issuers require a credit score to process a given credit application.

19. Because of the false reporting, Plaintiff's mortgage application was denied. Had Plaintiff been approved, he would have been able to buy a home instead of paying rent each month.

20. Despite Plaintiff's efforts, Experian has made no material changes to its reporting. Plaintiff cannot obtain credit when Experian reports him as deceased. Experian's reporting caused a severe amount of stress for Plaintiff.

21. In addition to the stress and mortgage denial, Experian's conduct caused Plaintiff to suffer significant emotional distress.

### *Experian's Willful Violations of the FCRA*

22. Experian has substantial notice and knowledge of the failure of its business procedures and systems to prevent living consumers from being inaccurately reported as deceased and without a credit score.

23. Experian places a "deceased" notation on a consumer's credit file and report when it is advised from any of its many data furnishing sources that a consumer is purportedly deceased.

24. Experian places a "deceased" notation in a consumer's file whenever a data furnisher inputs an "X" code in the ECOA field in the Metro 2 format that the furnisher uses to report account information to the credit reporting agencies, including Experian.

25. However, prior to adding a "deceased" notation to a consumer's credit file, Experian does not require or request a death certificate or any other proof of a consumer's purported deceased status from the data source that added the "X" code to its account reporting.

26. Experian also does not conduct any independent verification with any source that a consumer is actually deceased before adding a "deceased" notation to the consumer's credit file.

27. For example, Experian regularly receives the "Death Master File" from the Social Security Administration listing all the consumers that the United States government believes to be deceased, organized by Social Security number. However, Experian does not cross-reference the Social Security number associated with the purportedly deceased consumer with the Death Master File to determine if the deceased notation reported by the furnisher is in fact accurate and contained in the Death Master File.

28. In addition, Experian also fails to consider other conflicting information in a consumer's file—such as the opening of new accounts, payments made on currently open accounts, or the failure of other data furnishers to report the consumer as deceased—before marking a consumer as deceased.

29. Instead, Experian employs no procedures whatsoever to verify the accuracy of the deceased notation that it receives from its data furnishers.

30. This conduct causes consumers to suffer significant damages because when Experian reports a "deceased" notation in conjunction with one or more of a consumer's credit tradelines, Experian's credit scoring algorithm automatically reports that consumer's credit score as "zero" or "NA", which most often renders a consumer unable to obtain any new credit.

31. Experian and its competitor credit reporting agencies have repeatedly been sued for inaccurately reporting living consumers as deceased. *Sheldon v. Experian Info. Sols., Inc.*, No. CIV.A. 08-5193, 2010 WL 3768362 (E.D. Pa. Sept. 28, 2010); *Aslani v. Corelogic Credco, LLC*, No. 1:13-cv-2635-CC-LTW, 2014 WL 12861199, at *1 (N.D. Ga. Aug. 18, 2014), *report and recommendation adopted,* No. 1:13-cv-2635-CC-LTW, 2014 WL 12861361 (N.D. Ga. Sept. 8, 2014); *Sheffer v. Experian Info. Sols., Inc.*, No. CIV.A. 02-7407, 2003 WL 21710573, at *2 (E.D. Pa.

July 24, 2003); *Oxfurth v. Experian Info. Sols., Inc.*, 1:14-cv-123 (E.D. Va.); *Boris v. Experian Info. Sols., Inc.*, 7:16-cv-206 (W.D. Va.); *Baldwin v. Equifax Information Servs.*, LLC No. 2:20cv286 (E.D. Va.); *Pang v. Credit Plus, Inc.*, 1:20-cv-122 (D. Md.); *Schmitt v. Chase Manhattan Bank, N.A.,* No. 0:03:-cv-3295 (D. Minn. 2005); *Perez v. Trans Union, LLC, et al.*, 526 F. Supp. 2d 504, 509–10 (E.D. Pa. 2007).

32. Despite having been put on notice from numerous prior lawsuits challenging Experian's lack of procedures to verify whether a consumer is actually deceased before reporting a consumer as deceased and without a credit score, Experian has not modified its procedures, or lack thereof, to assure that the credit reports it prepares, publishes, and maintains are as accurate as maximally possible, as required by § 1681e(b) of the FCRA.

33. Despite the fact that Experian has the ability to cross reference a purportedly deceased consumer's Social Security number with the Social Security Administration's Death Master File, or consult other available sources of information to verify whether a given consumer is alive or deceased, Experian intentionally chooses not to do so.

34. Accordingly, Experian's violations of the FCRA are willful and it is liable for punitive damages in an amount to be determined by the Court under 15 U.S.C. § 1681n.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

35. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

36. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

37. On numerous occasions, Experian assembled and published a patently false consumer report concerning Plaintiff.

38. Despite actual and implied knowledge that Plaintiff is not dead, Experian readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

39. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintains concerning Plaintiff.

40. As a result of this alleged conduct, action, and inaction, Plaintiff suffered actual damages, including but not limited to credit denials, damage to his credit rating, lost opportunities to enter into consumer credit transactions, and emotional distress, including stress, anxiety, aggravation, inconvenience, embarrassment, and frustration.

41. Experian's conduct, actions, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court under 15 U.S.C. § 1681n. In the alternative, Experian's conduct, actions, and inaction was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

42. Plaintiff is entitled to recover actual damages, statutory damages, costs, and his attorney's fees from Experian in an amount to be determined by the Court under 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

43. Plaintiff is entitled to recover attorneys' fees and costs from Experian in an amount to be determined by the Court under 15 U.S.C. § 1681n and/or § 1681o.

WHEREFORE, Plaintiff demands judgment for compensatory, statutory, and punitive damages against Experian; for his attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court

deems proper.

## DEMAND FOR JURY TRIAL

44. Plaintiff demands a trial by jury.

Respectfully submitted,

**CHESTER L. HELDERMAN II**

Dated: May 31, 2023

*/s/ Sophia M. Rios*
Sophia M. Rios, SBN 305801
**BERGER MONTAGUE PC**
401 B Street, Suite 2000
San Diego, CA 92101
Tel: 619.489.0300
Facsimile: 215.875.4604
E-mail: srios@bm.net

Hans W. Lodge, *pro hac vice forthcoming*
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5999
Fax: (612) 584-4470
Email: hlodge@bm.net

Kristi Cahoon Kelly, *pro hac vice forthcoming*
Casey S. Nash, *pro hac vice forthcoming*
**KELLY GUZZO, PLC**
3925 Chain Bridge, Suite 202
Fairfax, VA 22030
Tel: (703) 424-7572
Fax: (703) 591-0167
kkelly@kellyguzzo.com
casey@kellyguzzo.com

*Counsel for Plaintiff*